IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THE BURLINGTON INSURANCE COMPANY, | § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 4:24-CV-02717 |
| v. | § § | |
| OSCAR LEE DENSON; WEST BELLFORT FORTUNE INC. D/B/A ZIP IN ZIP OUT, | § § § | |
| Defendants. | § § | |

**PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT**

The Burlington Insurance Company ("TBIC") files this its Original Complaint for Declaratory Judgment and respectfully shows the Court the matters set forth below:

**I.
PARTIES**

1. Plaintiff TBIC is an Illinois company incorporated under the laws of the State of Illinois with its principal place of business in Hartford, Connecticut. TBIC is therefore a citizen of Illinois and Connecticut for purposes of diversity jurisdiction.

2. Defendant Oscar Lee Denson ("Denson") is a Texas citizen who resides and may be served at 86 San Simeon Dr., Manvel, TX 77578 or 12345 I-10 Service Rd., Apt. 2605, New Orleans, LA 70128, or wherever he may be found.

3. Defendant West Bellfort Fortune, Inc. D/B/A Zip In Zip Out ("West Bellfort") is a Texas corporation with its principal place of business in Texas. West Bellfort is therefore a citizen of the State of Texas. West Bellfort can be served through its registered agent for service in

the state of Texas, Nooruddin W. Momin, 5615 Richmond Ave., Suite 230, Houston, TX 77057, or wherever he may be found.

## II.
## JURISDICTION AND VENUE

4. The Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiff and Defendants are citizens of different states, and the amount in controversy exceeds $75,000.00, excluding interest and costs.

5. The Court also has jurisdiction over this declaratory judgment action pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. §2201. An actual and substantial controversy exists between the parties. By this action Plaintiff TBIC seeks a declaration that under its insurance policy, issued to West Bellfort, it has no duty to defend or indemnify West Bellfort in connection with the lawsuit filed against it by Oscar Denson, in Harris County, Texas, as further discussed below.

6. Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District and Division because the underlying incident occurred and the underlying lawsuit was filed in this District and Division.

## III.
## FACTUAL BACKGROUND

<u>The Underlying Lawsuit</u>

7. On May 19, 2022, a lawsuit was filed against West Bellfort Fortune, Inc. DBA Zip In Zip Out in the 234th District Court of Harris County, Texas, Cause No. 2022-30026 (the "Underlying Lawsuit").

8. Plaintiff's Second Amended Petition in the Underlying Lawsuit alleges:

The party seeks:

Redress for the following tortuous [sic] acts by defendant's

**ASSAULT/BATTERY**
1) a harmful touching causing bodily injury;
The plaintiff Oscar Denson was forcefully detained by employees of the Zip in Zip out market located at 3509 Almeda Genoa Houston, TX 77047. Bodily Injury was caused by the employees restraining him and assaulting him.
2) an offensive or provocative touching; or- The touching was offensive to the plaintiff.
3) causing apprehension (fear) of an imminent harmful touching.

**FALSE IMPRISIONMENT**

1. The defendant willfully detained plaintiff.
2. The detention was without the consent of the plaintiff. •It is not necessary for the plaintiff to have verbally resisted to be without consent.
3. There was no legal authority for the detention. •Shopkeepers, employers, peace officers have the authority to make limited detentions. If the detention is longer than necessary, this can eliminate the legal authority. The shop keepers had no legal authority to detain the plaintiff. They thought he resembled an individual on video from a prior incident in the store. They are not law enforcement. When law enforcement arrived, they immediately knew this was the wrong individual being detained. Plaintiffs clearly have no ability to identify cross racially.
4. The plaintiff suffered injury, which may include physical or mental injuries such as humiliation and shame. The plaintiff suffered physical and emotional injury as a result of the Defendant's actions.

**NEGLIGENCE**

1. The defendant had a legal duty to act in a certain way toward the plaintiff.
The defendant had a legal duty not to assault and batter the plaintiff.
2. The defendant breached that duty.
The Defendant breached that duty by assaulting and battering the plaintiff.
3. The breach caused injury to the plaintiff.
The breach caused physical and emotion injury to the plaintiff.

**VICARIOUS LIABILITY**

The employees of the defendant were acting in the course and scope of their employment when they forcibly detained and assaulted the plaintiff OSCAR DENSON.
The employer authorized the acts of the employees. The plaintiff has actual damages.
Therefore, the employer is vicariously liable fort [sic] the tortuous acts of the employees.

9. On May 13, 2023, Denson filed a Motion for Default Judgment. The motion was

supported by an affidavit signed by Denson, in which he stated that on July 1, 2021, he entered the

Zip In Zip Out at 3509 Almeda Genoa and approached the counter to pay for an item. He put his

keys on the counter and the store clerk grabbed them and refused to give them back. The clerk said he stole from the store in the past. The clerk then came from behind the counter and hit him in the face and grabbed him. Another store employee then assisted in detaining him. He claims he was struck by both individuals. The police were called—he does not say by whom. He claims the police arrived and determined he was not the person on the video from the prior incident. He suggests both clerks cross-racially misidentified him, and that he filed an assault report with the police. He later advised he wanted to press charges. He suggests he brought the suit for damages for an illegal detention and assault by employees of the store.

10.   Several police reports were also filed with the motion for default judgment. The first was dated July 1, 2021, with the same date listed as the incident date, with the offense listed as assault. The location was 3509 Almeda Genoa Rd. Reported time was 8:44am. Denson was listed as the complainant, with an "apparent minor injury." Antonio Alvarado was listed as involved. Alvarado's work address was listed as 3509 Almeda Genoa. The narrative suggests the officer was dispatched to an assault in progress. Upon arrival he made contact with the complainant (Denson) who was sitting on the ground inside the store, and that the officer initially believed Denson was the suspect. There were conflicting statements. The store's video was viewed but was choppy. Denson stated he entered the store to buy a burrito. When he put his keys on the counter the store clerk took his keys and refused to give them back. He stated Alvarado pushed him and they began to fight. Alvarado and a clerk wearing red had jumped him. Denson claimed that in the assault the store manager punched him in the lip, but he was unsure if he wanted to press charges. He apparently later said he wanted to press charges. The officer indicated he tried to review the video but it was bad quality. He called the ADA who declined charges. The officer instructed Denson never to return to the store or he could be arrested for trespassing.

11. A second officer at the scene completed a separate report, which listed a different suspect as Albert Alemao. His work address was also listed as 3509 Almeda Genoa. He interviewed Alemao who stated that Denson was at the location four days earlier and he saw Denson steal a weedeater from the back of a customer's truck and run. Alemao stated that when Denson entered the store on July 1, he grabbed Denson's keys from the counter and told Denson that he stole a weedeater and he could not leave the store until he settled the weedeater situation. He stated Denson agreed to leave his phone number, but Alemao responded that he would keep Denson's keys until Denson returned the weedeater. Alemao stated Denson wanted his keys back, and Denson then struck Alemao in the side with a closed fist. They began fighting and Alemao defended himself. Alemao then sat on Denson until the police arrived. Alemao indicated he was willing to pursue charges against Denson.

12. A third police report related to a Terroristic Threat by Other Means, with a reported time of 1:24pm on July 1. Later that same day, the police were called back to the store and spoke with Alemao and Alvarado who were both still working at the store. They reported that Denson had returned to the store and told Alemao he was going to sue him and that he would be back. Denson reportedly told Alvarado he was going to kill him. Denson then left the store when they called the police.

13. On June 13, 2023, the court signed an order granting the motion for default judgment in part, as to liability only. The order notes that a hearing must be scheduled to determine damages.

14. A hearing was apparently held on August 28, 2023, as reflected by the Default Judgment signed on August 29, 2023. The judgment finds in favor of Denson on the claims of false imprisonment, assault/battery, negligence, mental anguish, pain and suffering, and enters

judgment against West Bellfort for $800,000, plus court costs of $510 and post-judgment interest at 6%.

15. The judgment was not appealed and has become final.

Notice of the Claim

16. On or about June 5, 2024, TBIC was first notified of the alleged July 1, 2021, incident, the Underlying Lawsuit and the default judgment entered therein.

The TBIC Policy

17. TBIC issued policy number 278B013642 to West Bellfort effective 10/11/2020 through 10/11/2021 (the "Policy").

18. The Coverage A liability insuring agreement in the Policy is endorsed to provide in relevant part as follows:

Paragraph 1. Insuring Agreement of Section I - Coverage A - Bodily Injury And Property Damage Liability is replaced in its entirety with the following:
1. Insuring Agreement
   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
      **(1)** The amount we will pay for damages is limited as described in **Section III –Limits Of Insurance;** and
      **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**
   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments –Coverages A and B.
   b. This insurance applies only to "bodily injury" and "property damage" only if:
      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
      (2) The "bodily injury" or "property damage" occurs during the policy period; and
      ******
   e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

19. The Coverage B insuring agreement in the Policy provides as follows:

COVERAGE B –PERSONAL AND ADVERTISING INJURY LIABILITY
1. Insuring Agreement

      **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

          **(1)**    The amount we will pay for damages is limited as described in Section **III** –Limits Of Insurance; and

          **(2)**    Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments –Coverages **A** and **B.**

      **b.**    This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

20.    As endorsed, "personal and advertising injury" is defined as follows:

**14.**    "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **a.**    False arrest, detention or imprisonment;
    **b.**    Malicious prosecution;
    **c.**    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
    **d.**    Oral or written publication, in any manner, of material that slanders or libels a person or organization, but does not include slander or libel that disparages a person's or organization's goods, products or services; or
    **e.**    Oral or written publication, in any manner, of material that violates a person's right of privacy.

21.    Coverage B includes the following exclusions:

    a.    Knowing Violation Of Rights Of Another
"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

    d.    Criminal Acts
"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

22.    The Policy includes an Exclusion – Assault, Battery Or Other Physical Altercation endorsement that amends the policy, particularly as to both Coverage A and Coverage B as follows:

EXCLUSION –ASSAULT, BATTERY OR OTHER PHYSICAL ALTERCATION
This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.**    Paragraph **D.** of this endorsement replaces exclusion **a.** of **2. Exclusions** in **Section I –Coverage A – Bodily** Injury and Property Damage under the Commercial General Liability Coverage Form.

**B.**    Paragraph E. of this endorsement is added to 2. Exclusions of Section I –Coverage B –Personal and Advertising Injury Liability under the Commercial General Liability Coverage Form.

<u>**PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT**</u>        **PAGE 7**

C. When the Miscellaneous Professional Liability Coverage endorsement is attached, Paragraph F. of this endorsement is added to Paragraph 2. Exclusions under the Miscellaneous Professional Liability Coverage endorsement.

D. This insurance does not apply to:
    a. Assault, Battery Or Other Physical Altercation
    "Bodily injury" or "property damage":
       **(1)** Expected or intended from the standpoint of any insured;
       **(2)** Arising in whole or in part out of any "assault" or "battery" committed or attempted by any person.
       **(3)** Arising in whole or in part out of any act or omission in connection with avoiding, preventing, suppressing or halting any actual or threatened "assault" or "battery."
       **(4)** Arising in whole or in part out of any actual or threatened verbal or physical confrontation or altercation committed or act or omission in connection with avoiding, preventing, suppressing or halting any actual or threatened verbal or physical confrontation or altercation.

E. This insurance does not apply to:
    z. Assault, Battery Or Other Physical Altercation
    "Personal and advertising injury":
       **(1)** Expected or intended from the standpoint of any insured;
       **(2)** Arising in whole or in part out of any "assault" or "battery" committed or attempted by any person.
       **(3)** Arising in whole or in part out of any act or omission in connection with avoiding, preventing, suppressing or halting any actual or threatened "assault" or "battery."
       **(4)** Arising in whole or in part out of any actual or threatened verbal or physical confrontation or altercation committed or act or omission in connection with avoiding, preventing, suppressing or halting any actual or threatened verbal or physical confrontation or altercation.

*******

G. The exclusions added in paragraphs **D, E** and **F** of this endorsement apply to all acts or omissions, including any act or omission in responding to or failing to respond or render aid, medical or otherwise, to any victim of the "assault" or "battery" or physical confrontation or altercation, and all theories of liability (direct or vicarious) asserted against any insured, including but not limited to all theories of negligence, gross negligence, recklessness or intentional tort and shall not be subject to any severability or separation of insureds provision in the policy.

H. The following are added to the **Definitions** Section of this policy:
"Assault" means any attempt or threat to inflict injury upon the person of another, or any display of force such as would give a person reason to fear or expect immediate bodily harm.
"Battery" means physical contact with a person without his or her consent that entails some injury or offensive touching.

23. This exclusion precludes coverage for all of the claims in the Underlying Lawsuit because the alleged bodily injury and personal and advertising injury was expected or intended from the standpoint of any insured, arose in whole or in part from assault or battery committed by any person, and arose in whole or in part from a verbal or physical confrontation or altercation.

24. The Policy includes an endorsement providing certain limited assault and battery coverage as Coverage D to the Policy, which provides:

LIMITED ASSAULT, BATTERY OR OTHER PHYSICAL

ALTERCATION LIABILITY COVERAGE - SCHEDULED
PREMISES ONLY (LIMIT OF LIABILITY INCLUDES DEFENSE COSTS)
**SCHEDULE**

| Description | Class Code | Limit of Liability Includes Defense Costs |
|---|---|---|
| Assault, Battery, or Other Physical Altercation | 19263 | Each Occurrence   $ l00,000 |
| | | Aggregate           $ 100,000 |
| Premium - not subject to adjustment unless entire policy is cancelled | | **Premium** |
| | | $ Incl |
| Premises: 3509 Almeda Genoa Rd., HOUSTON, TX 77047 | | |

A.     Coverage D - Limited Assault, Battery Or Other Physical Altercation Coverage is added to Section I - Coverages:
    1.     Insuring Agreement
        **a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies arising out of "assault", "battery" or other physical altercation.

        **We will have the right and duty to defend the insured against any "suit" seeking these damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:**
            **(1)**     The amount we will pay for damages arising out of "assault", "battery" or other physical altercation is limited to the amount stated in the Schedule above and as described in Paragraph **3. Limits Of Insurance** of this endorsement; and
            **(2)**     Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments; settlements; or defense fees or costs under Coverage **D.**
            No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B.** Such Supplementary Payments shall also apply to Coverage **D,** except to the extent that such Supplementary Payments are limited as amended in Paragraph **3. Limits Of Insurance** of this endorsement.
        **b.**     This insurance applies to "bodily injury", "property damage" or "personal and advertising injury" caused by or arising out of "assault", "battery" or other physical altercation but only if:
            **(1)**     The "assault", "battery" or other physical altercation was committed at the Scheduled Premises listed above; but if no entry is made above, then only those premises as scheduled in the policy; and
            **(2**     "Bodily injury", "property damage" or "personal and advertising injury" arising from the "assault", "battery" or other physical altercation takes place during the policy period.
    2.     Exclusions
        The following exclusions apply to Coverage D - Limited Assault, Battery Or Other Physical Altercation Coverage:
        This insurance does not apply to:
        a.     Assault, Battery Or Other Physical Altercation Committed By Any Insured
        **"Assault", "battery" or other physical altercation committed by any insured or agent of any insured, including any act or omission in responding to or failing to respond or render aid, medical or otherwise, to any victim of the "assault", "battery" or other**

>> **physical altercation, and all theories of liability (direct or vicarious) asserted against any insured, including but not limited to all theories of negligence, gross negligence, recklessness or intentional tort and shall not be subject to any severability or separation of insureds provision in the policy.**

*********

3. LIMITS OF INSURANCE

    For the purposes of this endorsement, the following is added to Section III - Limits Of Insurance of the Commercial General Liability Coverage Form:

    a. The Each Occurrence limit shown in the Schedule of this endorsement is the most we will pay for the sum of:
        **(1)** Damages;
        **(2)** Defense costs;
        **(3)** Supplementary payments arising out of any "occurrence" of "assault", "battery" or other physical altercation.

    b. The Aggregate limit shown in the Schedule of this endorsement is the most we will pay for the sum of:
        **(1)** Damages;
        **(2)** Defense Costs;
        **(3)** Supplementary Payments arising out of all claims of "assault", "battery" or other physical altercation under this policy.

    c. The Limits of Liability shown for Coverage **D** are the most we will pay regardless of the number of:
        **(1)** Insureds;
        **(2)** Claims made or "suits" brought;
        **(3)** Persons or organizations making claims or bringing "suits"; or
        **(4)** Theories of liability or causes of action in a "suit".
        In no event will any other Limits of Liability available under any other coverage form or coverage part contained in this policy be applicable or payable for any "bodily injury", "property damage" or "personal and advertising injury" arising out of or resulting from any "assault", "battery" or other physical altercation other than those Limits of Liability as set forth in this endorsement.
        **(5)** The limits provided under Coverage **D** are inclusive of and are not in addition to limits otherwise described in **Section III - Limits Of Insurance** of the Commercial General Liability Coverage Form or any Liquor Liability Coverage Form made a part of this policy.
        **(6)** With respect to this endorsement, Supplementary Payments for this coverage are subject to and **will reduce the limits of insurance shown in the Schedule.**

4. DEFINITIONS

    The following definitions apply to Coverage D Limited Assault, Battery Or Other Physical Altercation Coverage:

    Assault" means any attempt or threat to inflict injury upon the person of another, or any display of force such as would give a person reason to fear or expect immediate bodily harm.

    Battery" means physical contact with a person without his or her consent that entails some injury or offensive touching.

25. Coverage D does not apply because it only extends coverage, subject to the sublimit, for assault, battery or other physical altercation. However, it excludes coverage for assault, battery or other physical altercation committed by any insured or agent of any insured. Here, the alleged wrongful conduct was committed by two employees acting in the course and

scope of their employment and performing duties related to the insured's business, and thus would constitute insureds.

26. The Policy includes the following condition precedent to coverage:

2. Duties In The Event Of Occurrence, Offense, Claim Or Suit
   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
      (1) How, when and where the "occurrence" or offense took place;
      (2) The names and addresses of any injured persons and witnesses; and
      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.
   b. If a claim is made or "suit" is brought against any insured, you must:
      (1) Immediately record the specifics of the claim or "suit" and the date received; and
      (2) Notify us as soon as practicable. You must see to it that we receive written notice of the claim or "suit" as soon as practicable.
   c. You and any other involved insured must:
      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
      (2) Authorize us to obtain records and other information;
      (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and
      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.
   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

27. West Bellfort failed to comply with this condition precedent, precluding coverage. Because a final default judgment had been entered against West Bellfort before notice was provided to TBIC, TBIC was prejudiced by the late notice.

## IV.
## DECLARATORY RELIEF – NO DUTY TO DEFEND OR INDEMNIFY

28. Plaintiff TBIC incorporates by reference the allegations stated above.

29. TBIC was not timely notified of the alleged occurrence, offense or the Underlying Lawsuit. TBIC was prejudiced by the late notice because, by the time it was belatedly notified, a final default judgment had already been entered against West Bellfort. Accordingly, West Bellfort failed to satisfy a condition precedent to coverage and is not entitled to coverage under the Policy.

30. In addition, because a final default judgment had been entered in the Underlying Lawsuit before TBIC was notified of the claim or suit, TBIC never had a duty to defend West Bellfort.

31. Further, because the Policy does not provide coverage for the claims that resulted in the judgment, TBIC has no duty to indemnify West Bellfort in connection with the claims. Accordingly, TBIC has no duty to defend or indemnify West Bellfort against the claims asserted against it in the Underlying Lawsuit or the default judgment.

32. Therefore, Plaintiff TBIC seeks a declaratory judgment by this Court that TBIC has no duty to defend or indemnify West Bellfort under the Policy against the claims asserted in the Underlying Lawsuit or the default judgment.

## V.
## PRAYER

WHEREFORE, for the foregoing reasons, TBIC respectfully requests judgment against Defendants as follows:

1. A declaration that TBIC has no duty to defend or indemnify West Bellfort under the Policy against the claims asserted in the Underlying Lawsuit;

2. Costs of court, pre-judgment and post-judgment interest as allowed by law; and

3. Such other and further relief as to which TBIC may show itself justly entitled.

Respectfully submitted,

*/s/ Wm. Lance Lewis*
WM. LANCE LEWIS
State Bar No. 12314560
S.D. Bar No. 28635
MARCIE L. SCHOUT
State Bar No. 24027960
S.D. Bar No. 34593
TORIE ABBOTT
State Bar No. 24115929
S.D. Bar No. 3841924
**QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, P.C.**
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
llewis@qslwm.com
mschout@qslwm.com
tabbott@qslwm.com
(214) 871-2100 (Telephone)
(214) 871-2111 (Facsimile)

**ATTORNEYS FOR PLAINTIFF
THE BURLINGTON INSURANCE COMPANY**